UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

MICHAEL POZAN,
an individual,

      Plaintiff,                            Case No.
                                                      Hon.

vs.

QUALITY METALCRAFT, INC.,
a Domestic Limited Liability Company,

      Defendant.

---

## COMPLAINT

Plaintiff, MICHAEL POZAN, by and through his attorneys, DILLON & DILLON, P.L.C., hereby makes the following Complaint:

## JURISDICTION

1. Plaintiff MICHAEL POZAN ("Plaintiff") was, at all times relevant to this Complaint, a resident of the County of Wayne, State of Michigan.

2. Defendant QUALITY METALCRAFT, INC. ("Defendant Company" or "QMC") is a corporation incorporated in the state of Delaware, with its headquarters in Livonia, Michigan. At all times relevant to this Complaint, QMC maintained an office in Livonia, Wayne County, Michigan.

3. The amount in controversy exceeds the sum of Seventy-Five

Thousand Dollars ($75,000) exclusive of interest and costs.

4. This Court has jurisdiction of the federal claims asserted herein pursuant to 28 USC 1331. This Court has supplemental jurisdiction over the claims arising under the law of the State of Michigan pursuant to 28 USC 1367 and the principles of pendent jurisdiction.

5. The unlawful employment practices complained of in this complaint occurred within the Eastern District of Michigan, and venue is proper within this District and Division pursuant to 28 U.S.C. '1391(a).

## GENERAL ALLEGATIONS

6. Plaintiff was born in 1963.

7. Plaintiff began working for QMC on December 10, 2018, as a production controller after being recruited away from a similar position with another employer.

8. Plaintiff reported directly to the Chief Financial Officer.

9. Shortly after joining QMC, I discovered major balance sheet discrepancies and brought these to the attention of my supervisor.

10. Over the ensuing months, I was criticized for being too "old school" when it came to dealing with balance sheet discrepancies. In the first quarter of 2020, I was further told by my supervisor "why am I paying an older accountant to deal with this stuff if you are not going to do it my way" and "I could replace you

with a younger accountant that will do everything I ask him". I was also told by this supervisor that if I did not do as I was being told on this issue, I was going to be replaced by a younger employee.

11. On February 25, 2020 at a management meeting that included approximately 12 other employees wherein the accounting discrepancy was being discussed, QMC's CEO Ron Kirsansda said to me "if you don't do what we are asking you to do, we are going to replace you with a 32 year old kid". At the time this statement was made, Kirsansda looked at Plaintiff and then looked directly at Mike Mlynczyk who reported to Plaintiff and who was actually 30 years old at the time. Mr. Mlynczyk appeared embarrassed by Kirsansda's comment.

12. Walking out of the meeting, Plaintiff's supervisor, Joe Bojaj, said to Plaintiff "if you ever need to make an age discrimination complaint, you could point to that comment right there."

13. Also, after the meeting, even people not in the meeting came up to Mr. Pozan and said they heard what Kirsansda had said to Plaintiff and were shocked by it.

14. After Kirsansda's comment, Bojaj, in addition to his other comments noted above, repeated Kirsansda's comment that if Plaintiff did not do certain things, Plaintiff was going to be replaced by a "thirty year old" employee "who would do what he was told".

3

15. After the February 25 meeting, Plaintiff's supervisor began speaking in harsh terms to Plaintiff, and forced Plaintiff to work unusually long hours, in some instances performing unnecessary or meaningless tasks.

16. Plaintiff perceived the treatment to which he was being subjected since the February 25 meeting as an effort to get Plaintiff to quit or otherwise make problems that would be used to justify a termination. At one point Plaintiff confronted his supervisor (Bojaj) about this treatment and Bojaj admitted he was purposefully "trying to be an asshole".

17. In the March/April 2020 timeframe, Plaintiff made complaints to Amanda Backus of QMC's human resources department regarding the age discrimination to which he was being subjected.

18. In early May, 2020, QMC terminated Plaintiff's employment in furtherance of its age discrimination against Plaintiff and in retaliation for Plaintiff complaining about being subjected to age discrimination.

19. Also notable is the fact that younger employees whose employment has been terminated by QMC before and after Plaintiff's termination were offered severance packages whereas older employees such as Plaintiff were not offered severance packages.

20. The wrongful conduct to which Plaintiff has been subjected has severely damaged Plaintiff's professional career, as well as having caused

significant economic and non-economic damages.

21. Plaintiff continues to suffer from some or all of the discriminatory and hostile treatment and retaliation described herein.

22. On or about August 18, 2020, Plaintiff filed a charge with the EEOC describing the conduct set forth above.

23. On or about May 25, 2021, the EEOC issued an order closing its file and advising Plaintiff of his rights to bring suit directly against QMC.

24. Plaintiff has made more than reasonable efforts to mitigate his damages by seeking replacement employment but has only been partially successful in obtaining such employment.

## COUNT I
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

25. Plaintiff incorporates by reference all facts and allegations elsewhere set forth in this Complaint.

26. At all times relevant hereto Plaintiff was qualified for protection against age discrimination under the Age Discrimination in Employment Act of 1967, as amended, hereinafter referred to as the "ADEA".

27. Pursuant to the ADEA, including without limitation 29 U.S.C. §623(a), it shall be unlawful for an employer to fail or otherwise refuse to hire or to discharge any individual or otherwise discriminate against an individual with

respect to his compensation, terms, conditions, or privileges of employment because of such individual's age.

28. Defendant is an employer within the meaning of the ADEA.

29. Defendant discriminated against Plaintiff on account of his age and violated the ADEA in several particulars, including without limitation:

   a. Subjecting Plaintiff to harassing or otherwise unlawful statements regarding his age;

   b. Depriving Plaintiff of appropriate managerial support;

   c. Undermining Plaintiff's efforts to perform his job responsibilities;

   d. Depriving Plaintiff of training opportunities;

   e. Depriving Plaintiff of fair evaluations;

   f. Depriving Plaintiff of opportunities for better job assignments;

   g. Depriving Plaintiff of opportunities for job assignments outside of the influence of those personnel engaged in discriminating against him;

   h. Terminating Plaintiff's employment;

   i. Failing and/or refusing to offer Plaintiff a severance package;

   j. Negatively commenting on Plaintiff's employment with QMC to prospective employers;

      k.      Other acts of discrimination to be determined through discovery.

30.    Plaintiff complained to his supervisor and to QMC's human resources department about the age discrimination to which he was being subjected.

31.    Rather than appropriately addressing the problem, Plaintiff was subjected to additional age discrimination in retaliation for making such complaints, including continuation of the aforementioned wrongful conduct.

32.    Retaliation for exercising one's rights under the ADEA is also a violation of the ADEA.

33.    As a result of Defendant's discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

      a.      Loss of wages and other compensation, both in the past and in the future;

      b.      Loss of the value of benefits, both in the past and in the future;

      c.      Loss of earning capacity;

      d.      Loss of promotional opportunities;

      e.      Non-economic damages including without limitation damages for mental anguish, anxiety, stress, humiliation, embarrassment, and damage to reputation.

      f.      Other injuries and damages that become known through the discovery process.

34.    Plaintiff also seeks equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendant in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, liquidated damages, and attorney fees as allowed by law.

## COUNT II
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT: AGE DISCRIMINATION AND RETALIATION

35.    Plaintiff incorporates by reference all facts and allegations elsewhere set forth in this Complaint.

36.    At all times relevant hereto Plaintiff was qualified for protection against age discrimination under the ELCRA.

37.    Pursuant to the ELCRA, it is unlawful for an employer to discriminate against an employee with respect to any aspect of employment on account of age.

38.    At all times relevant hereto, Defendant was an "employer" within the meaning of §201(a) of the ELCRA.

39.    Defendant wrongfully discriminated against Plaintiff on account of his age and violated the ELCRA in several particulars, including without limitation:

a. Subjecting Plaintiff to harassing or otherwise unlawful statements regarding his age;

b. Depriving Plaintiff of appropriate managerial support;

c. Undermining Plaintiff's efforts to perform his job responsibilities;

d. Depriving Plaintiff of training opportunities;

e. Depriving Plaintiff of fair evaluations;

f. Depriving Plaintiff of opportunities for better job assignments;

g. Depriving Plaintiff of opportunities for job assignments outside of the influence of those personnel engaged in discriminating against him;

h. Terminating Plaintiff's employment;

i. Failing and/or refusing to offer Plaintiff a severance package;

j. Negatively commenting on Plaintiff's employment with QMC to prospective employers;

k. Other acts of discrimination to be determined through discovery.

40. Plaintiff complained to his supervisor and to QMC's human resources department about the age discrimination to which he was being subjected.

41. Rather than appropriately addressing the problem, Plaintiff was subjected to additional age discrimination in retaliation for making such complaints, including continuation of the aforementioned wrongful conduct.

42. Retaliation for exercising one's rights under the ELCRA is also a violation of the ELCRA.

43. As a result of Defendant's discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

   a. Loss of wages and other compensation, both in the past and in the future;

   b. Loss of the value of benefits, both in the past and in the future;

   c. Loss of earning capacity;

   d. Loss of promotional opportunities;

   e. Non-economic damages including without limitation damages for mental anguish, anxiety, stress, humiliation, embarrassment, and damage to reputation.

   f. Other injuries and damages that become known through the discovery process.

44. Plaintiff also seeks equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, liquidated damages, and attorney fees as allowed by law.

### COUNT III
### VIOLATION OF THE
### BULLARD-PLAWECKI EMPLOYEE RIGHT TO KNOW ACT

45. Plaintiff incorporates by reference all facts and allegations elsewhere set forth in this Complaint.

46. On July 22, 2020, Plaintiff made a written request for all copies of his employee files pursuant to the Bullard-Plawecki Employee Right to Know Act ("BPERKA"), MCL ' 423.581.

47. Pursuant to § 423.581 of BPERKA, an employee has a right to review, copy and respond to any personnel record maintained by their employer.

48. On or about July 31, 2020, Defendant produced 23 pages of documents that Defendant purports to be Plaintiff's employment file.

49. On information and belief, these 23 pages are not the full and complete employee file pertaining to Plaintiff maintained by Defendant. For example, the 23 pages contain no records regarding Plaintiff's bonuses during his employment, any disciplinary records, nor any documentation pertaining to the termination of Plaintiff's employment with Defendant.

50. Accordingly, Defendant has willfully failed and/or refused to comply with Defendant's requests for his employment records and personnel file, and consequently, has been denied the opportunity to exercise his rights pursuant to BPERKA.

51. BPERKA provides for damages for violations of the act, including an award of actual damages and attorney fees.

WHEREFORE, Plaintiff prays for judgment against Defendant in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, liquidated damages, and attorney fees as allowed by law.

## **JURY DEMAND**

Plaintiff requests a jury trial in the above entitled cause.

Respectfully submitted,

DILLON & DILLON, P.L.C.

BY: /s/ Paul J. Dillon
Paul J. Dillon (P46913)
Attorney for Plaintiff
9429 S. Main Street
Plymouth, MI 48170
(734) 455-9000

August 17, 2021                    pjdillon@ddplc.net